A07A1059. OPERATIONS MANAGEMENT INTERNATIONAL, INC. v. CITY OF FORSYTH.

(654 SE2d 438)

JOHNSON, Presiding Judge.

This is an appeal from the trial court's judgment confirming the arbitrator's award in a breach of contract case. For the reasons that follow, we affirm the judgment of the trial court.

Operations Management International, Inc. ("OMI"), entered into a contract in 1991 with the City of Forsyth, wherein OMI agreed to manage, operate and maintain the City's water and wastewater treatment systems. In 2001, the City temporarily shut down one of its two water treatment plants because a drought caused the plant to receive an insufficient water supply from its source creek. Pursuant to the agreement, OMI was responsible for maintaining the plant in operating condition while it was closed, so that the plant could be used to supply water in the future when the water supply again became adequate. The plant remained closed for several years.

In late 2004, the parties met to discuss various issues concerning the agreement and the parties' responsibilities thereunder. In February 2005, with the plant still closed, OMI notified the City that it was terminating the contract. The City accepted the termination.

In March 2005, the City consulted an engineering firm to assess the plant's physical condition and provide the City with recommendations and cost estimates to bring the plant back into operation, to determine if the plant meets current design criteria, and to make recommendations for modernization.

An engineer who evaluated the plant issued a report in June 2005 indicating that the plant was not in operating condition. He testified that the plant did not appear to have been maintained, operated, or kept in a state of readiness. In his opinion, the plant needed a minimum of about $613,000 in maintenance work to make it operational.

After receiving the consultant's report, the City initiated this action against OMI in superior court alleging that OMI failed to keep the plant in good repair and good working order, and that OMI was responsible for the cost of restoring the plant to operating condition. OMI filed a counterclaim seeking unpaid fees due under the contract. Pursuant to the terms of the contract, the parties referred the dispute to arbitration.

After an arbitration hearing which lasted several days, the arbitrator issued an award determining that OMI was responsible for $613,000 in maintenance costs for the plant, offset by $459,189 which the City owed OMI for unpaid fees, for a net award to the City of $153,810. OMI moved the arbitrator to correct the computation, alleging the award disregarded the terms of the contract. The arbitrator denied the motion.

The parties then filed cross-motions with the superior court. The City moved to have the award confirmed, and OMI sought to modify or vacate the award. The court confirmed the arbitration award, denied OMI's motion, and entered judgment for the City in the amount of $153,810. OMI appeals.

The purpose of arbitration is to avoid resorting to the courts for dispute resolution.[1] As a general rule, in proceedings to confirm or vacate an arbitration award, the role of the trial court should be limited so that the purpose of avoiding litigation by resorting to arbitration is not frustrated.[2] Consequently, a party seeking confirmation of an arbitration award is entitled to confirmation unless the trial court vacates the award pursuant to the specific statutory grounds set forth in OCGA §§ 9-9-13 and 9-9-14.[3] To vacate an award of arbitration, a party must show that its rights were prejudiced by: (1) corruption, fraud, or misconduct in procuring the award; (2) partiality of an arbitrator; (3) an overstepping of the arbitrator of his authority or such imperfect execution of it that a final and definite award upon the subject matter submitted was not made; (4) a failure to follow the procedure of the Code, unless the party applying to vacate the award continued with the arbitration with notice of this failure and without objection; or (5) manifest disregard of the law.[4]

1. OMI contends the arbitrator exceeded his authority in awarding damages in conflict with the express terms of the parties' agreement. OMI argues the arbitrator (a) ignored the contract's definitions of "maintenance" and "capital expenditures" and thereby exceeded

---

[1] *Hardin Constr. Group v. Fuller Enterprises*, 265 Ga. 770, 771 (462 SE2d 130) (1995).

[2] Id.

[3] Id.

[4] OCGA § 9-9-13 (b); see also *Progressive Data Systems v. Jefferson Randolph Corp.*, 275 Ga. 420 (568 SE2d 474) (2002).

his authority by holding OMI responsible for costs of capital improvements or expenditures; and (b) entered an award which exceeded the maximum amount of OMI's liability for repairs under the contract. We disagree.

(a) The contract defines "maintenance" as "those routine and/or repetitive activities required or recommended by the equipment or facility manufacturer or OMI to maximize the service life of the equipment, sewer, vehicles and facility." "Capital expenditures" are defined as "expenditures for (1) the purchase of new equipment or facility items that cost more than [$2,500]; or (2) major repairs that significantly extend equipment or facility service life and cost more than [$2,500]; or (3) expenditures that are planned, non-routine, and budgeted by Owner."

There is nothing in the record showing that the arbitrator ignored the meaning of "maintenance" and "capital expenditures" as used in the contract. In fact, the record suggests the contrary. In the award, the arbitrator specifically states that OMI was responsible for maintaining the plant in operating condition, and the City was responsible for making capital repairs and improvements. The arbitrator notes that "obsolete and worn out parts" would have to be replaced by the City as capital expenditures. These statements are not inconsistent with the definitions contained in the contract. Likewise, contrary to OMI's argument, the engineer's testimony was not inconsistent with the contract's definitions. The witness testified that in his opinion "maintenance" involved "keeping the plant in a state of readiness . . . so it could be turned on when it was needed." The arbitrator found credible evidence that returning the plant to operating condition could cost as much as $1.24 million, but determined that $613,000 would cover the maintenance costs. OMI has not shown that the arbitrator ignored the terms of the contract.[5]

(b) OMI also contends the award exceeds OMI's contractual responsibility for repairs. OMI points to the contract's provision that OMI shall not pay more than $50,000 per year for repairs and owner-directed improvements, and posits that, therefore, the maximum amount of repair costs for which OMI can be responsible over the period at issue (August 2001 through February 2005) is $175,410.

In this case, there was testimony that a treatment plant which is not maintained properly while it is closed will age quickly and likely fall into disrepair. The arbitrator's award was based not only on OMI's failure to make necessary repairs, but on the deterioration which resulted from that failure to maintain the plant. As the

---

[5] See *Dan J. Sheehan Co. v. McCrory Constr. Co.*, 284 Ga. App. 159, 162 (1) (643 SE2d 546) (2007).

arbitrator stated, had OMI properly maintained the plant, many of the repairs needed in 2005 would not have been necessary.

Under Georgia law, damages recoverable for a breach of contract are such as arise naturally from such breach.[6] The measure of damages is the amount which will compensate the injured party for a loss which a fulfillment of the contract would have prevented or the breach of it entailed.[7] That is, the injured party is, so far as it is possible to do so by a monetary award, to be placed in the position it would have been in had the contract been fully performed.[8] The City was entitled to damages for repairs which became necessary when OMI failed to make repairs as needed and as required by the contract.

2. OMI contends the arbitrator ignored the City's failure to comply with the agreement's notice requirements before filing the lawsuit. OMI relies on paragraph 7.2, which provides that either party may terminate the agreement for a material breach by the other party after giving written notice of the breach and allowing the other party 30 days to correct the breach. Paragraph 7.1 also allows either party to terminate the agreement with 60 days' notice. The arbitrator specifically found that OMI terminated the agreement and gave the required notice to the City, which the City accepted. In any event, there was evidence that the City notified OMI of OMI's alleged breach in late 2004, but that the breach was not corrected. This enumeration is without merit.

3. OMI contends the arbitrator miscalculated the award by including damages for which OMI was not responsible under the contract. Specifically, OMI argues that the award includes the costs of about a dozen items which should be considered capital improvements rather than maintenance items.

In the award, the arbitrator noted that there was credible evidence indicating that the cost of restoring the plant to operating condition ranged from $713,500 to $1,247,400, the latter being the cost of a full upgrade of the facility. He also referred to the engineer's estimated maintenance cost of $613,000, as well as OMI's evidence that the plant was already "up and running" and in operating condition in 2004. Based on the evidence adduced over the course of the hearing, the arbitrator found that $613,000 would restore the plant to operating condition.

Although in its brief OMI lists several items it believes were included in that $613,000 figure and discusses why OMI should not bear the costs of each of those particular items, the arbitrator does not

[6] See OCGA §§ 13-6-1; 13-6-2.
[7] *Accent Walls v. Parker*, 162 Ga. App. 633 (1) (292 SE2d 509) (1982).
[8] Id.

specify in the award which repair items formed the basis for the award.[9] In any event, we note that courts must not decide the correctness of the arbitrator's contract interpretation, only whether his decision draws its essence from the contract.[10]

OMI has not established one of the statutory grounds for vacating an award, so the trial court's ruling on this issue must be affirmed.[11]

*Judgment affirmed. Phipps and Mikell, JJ., concur.*

DECIDED NOVEMBER 19, 2007.

*Hunter, Maclean, Exley & Dunn, Wade W. Herring II*, for appellant.

*Haygood, Lynch, Harris, Melton & Watson, C. Robert Melton*, for appellee.

---

[9] There is no requirement that the arbitrator's award include specific findings or reasons absent a request by the parties under OCGA § 9-9-39 (a). *Trend-Pak of Atlanta v. Arbor Commercial Div.*, 197 Ga. App. 137, 138 (1) (397 SE2d 592) (1990).

[10] *U. S. Intermodal &c. v. Ga. Pacific Corp.*, 267 Ga. App. 832, 834 (600 SE2d 800) (2004).

[11] See generally *Trend-Pak of Atlanta*, supra.